## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| Brooks M. Witzke, | ) | C.A. No. ____ |
| | ) | |
| Plaintiff, | ) | Non-Arbitration |
| | ) | Complaint for Emergency Injunctive Relief |
| v. | ) | |
| THE IDAHO STATE BAR, | ) | |
| Matthew K. Wilde, in his official capacity, | ) | |
| Kurt D. Holzer, in his official capacity, | ) | |
| and | ) | |
| Joseph N. Pirtle, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiff, Brooks M. Witzke ("Plaintiff") brings this action for emergency Injunctive and

Declaratory Relief pursuant to the Federal Civil Rights Statute 42 U.S.C. §1983.

## INTRODUCTION

It must be remembered that **the right of a lawyer or Bar applicant to practice his profession is often more valuable to him than his home, however expensive that home may be**. Therefore . . . when a State seeks to deny an applicant admission or to disbar a lawyer, it must proceed according to the **most exacting demands of due process of law**. This must mean at least that the right of a lawyer or Bar applicant to practice cannot be left to the mercies of his prospective or present competitors. When it seeks to deprive a person of the right to practice law, a State must accord him the same rights as when it seeks to deprive him of any other property. Perhaps almost anyone would be stunned if a State sought to take away a man's house because he failed to prove his loyalty or refused to answer questions about his political beliefs.

*Law Students Civ. Rights Research Council, Inc. v. Wadmond*, 91 S. Ct. 720, 731 (1971)

(Emphasis added).

Irrespective of whether the practice of law is a "right" or "privilege," a person cannot be

prevented from practicing law except for valid reasons, such practice **not being a matter of the**

**state's grace**. *SCHWARE v. Bd. OF BAR Exam'rs OF N.M.*, 77 S. Ct. 752, 753 (1957)

(Emphasis added). When **"[a] claim of a present right to admission to the bar of a state and a denial of that right is a controversy . . . the requirements of procedural due process must be met** . . . [t]he right is **not a matter of grace and favor**." *Willner v. Comm. on Character & Fitness*, 83 S. Ct. 1175, 1179-80 (1963) (Emphasis added).

"[A bar applicant's] interest in practicing law in Idaho is a substantial interest." *Dexter v. Idaho State Bar Bd. of Comm'rs*, 116 Idaho 790, 793, 780 P.2d 112, 115 (1989). As the Idaho Supreme Court once stated:

> The current administration of moral character criteria is, in effect, a form of **Kadi justice with a procedural overlay.** (Fn. *See M. Weber, Bureaucracy*, in From Max Weber: Essays In Sociology 196, 216-21 (H. Gerth & C. Mills eds. 1946) (defining Kadi justice as informal judgments rendered according to individual decisionmaker's ethical or practical valuations).) **Politically nonaccountable decisionmakers render intuitive judgments, largely unconstrained by formal standards and uninformed by a vast array of research that controverts the premises on which such adjudication proceeds.** This process is a costly as well as empirically dubious means of securing public protection. Substantial resources are consumed in vacuous formalities for routine applications, and non-routine cases yield intrusive, inconsistent, and idiosyncratic decision-making. Examiners generally lack the resources, information, and techniques to predict subsequent abuses with any degree of accuracy. Only a minimal number of applicants are permanently excluded from practice, and the rationale for many of those exclusions is highly questionable. (Footnote included.)

*Dexter*, 116 Idaho at 793, 780 P.2d at 115 (Emphasis added) (citing Rhode, *Moral Character as a Professional Credential*, 94 Yale L.J. 491, 584-85 (1985)). "The Commissioners carry a great responsibility and, in its execution, they wield tremendous power. The bases for decisions need to be made explicit in order to make those decisions subject to meaningful review." *Id*.

This case involves an analog-companion case currently pending before the Honorable Judge Raymond E. Patricco, *Brooks M. Witzke v. Idaho State Bar, et al.*, No. 22-cv-00090 (D. Idaho Feb. 28, 2022) ("Companion Case"). Plaintiff seeks emergency injunctive relief from Judge Patricco in this instant case, which is warranted under the circumstances set forth herein.

## THE PARTIES

1.      Plaintiff Brooks M. Witzke is an Idaho resident, a citizen of the United States, a lawyer, a graduate of an ABA accredited law school, and he successfully passed the Delaware Bar Exam in July of 2019. Plaintiff is a qualified bar applicant who is registered to sit for the July 2022 Idaho Bar Examination.

2.      The Idaho State Bar ("ISB") is an official arm of the Idaho Supreme Court created by the Court to promulgate The Rules of the Supreme Court relating to admissions to the Bar. The Idaho Supreme Court ("Supreme Court") is established by Article V, Sections 2 and 6 of the Idaho Constitution, and has exclusive jurisdiction to regulate the admission of persons to the practice of law and has delegated its regulatory authority to the ISB, its official arm. Within the ISB are committees (sections of the ISB) that administer the Rules of the Supreme Court relating to admissions to the Bar, these ISB committees are known as the Character and Fitness Committee ("CF Committee") and the Board of Commissioners of the Idaho State Bar ("The Board"). ISB is being sued for prospective injunctive and declaratory relief under the *Ex Parte Young, 209 U.S. 123, 159-160 (1908)* exception to Eleventh Amendment immunity. *Accord Koslow v. Commonwealth of Pennsylvania*, 302 F. 3d 161, 168 (3rd Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003).

3.      Matthew K. Wilde, ("Wilde") is an Idaho resident currently residing at 6535 W Plantation Lane Boise, ID 83703 and is the Chairman of the CF Committee. Wilde is being sued in his official capacity for prospective injunctive and declaratory relief under the *Ex Parte Young, 209 U.S. 123, 159-160 (1908)* exception to Eleventh Amendment immunity. *Accord Koslow v. Commonwealth of Pennsylvania*, 302 F. 3d 161, 168 (3rd Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003).

4.      Kurt D. Holzer, ("Holzer") is an Idaho resident currently residing at 1150 W

Parkhill Dr. Boise, ID 83702 and is the President of The Board. Holzer is being sued in his

official capacity for prospective injunctive and declaratory relief under the *Ex Parte Young, 209

U.S. 123, 159-160 (1908)* exception to Eleventh Amendment immunity. *Accord Koslow v.

Commonwealth of Pennsylvania*, 302 F. 3d 161, 168 (3rd Cir. 2002); *Miranda B. v. Kitzhaber*,

328 F.3d 1181, 1185 (9th Cir. 2003).

5.      Joseph N. Pirtle, ("Pirtle") is an Idaho resident currently residing at 1523 N

Watson Way, Eagle, ID 83616 and is the Chief Bar Counsel enforcing the ISB bar admissions

process. Pirtle is being sued in his official capacity for prospective injunctive and declaratory

relief under the *Ex Parte Young, 209 U.S. 123, 159-160 (1908)* exceptions to Eleventh

Amendment immunity. *Accord Koslow v. Commonwealth of Pennsylvania*, 302 F. 3d 161, 168

(3rd Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003). At all relevant

times to this Complaint, Pirtle acted under color of law as an agent or employee of the ISB.

6.      Collectively, The Idaho State Bar, Wilde, Holzer, and Pirtle will be collectively

referred to as "ISB."

7.      All Defendants to this Verified Complaint are being sued under the *Pulliam v.

Allen*, 466 U.S. 522, 536, 104 S. Ct. 1970, 1978 (1984), *D.C. Court of Appeals v. Feldman*, 460

U.S. 462, 485, 103 S. Ct. 1303, 1316 (1983), and *Supreme Court of Virginia v. Consumers

Union of the United States*, 446 U.S. 719, 100 S. Ct. 1967, 64 L. Ed. 2d 641 (1980) exceptions to

absolute/quasi judicial immunity.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the claims asserted herein pursuant

to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4), 18 U.S.C. §1964, and 42 U.S.C. § 1988 since

this case arises under the laws of the United States and jurisdiction is expressly provided for all claims under 42 U.S.C. §1983.

9.     Plaintiff is asking this Court to declare his rights and other legal relations under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

10.     Personal jurisdiction in this judicial district over the Defendants is proper because they all reside in the State of Idaho or have contacts with the State of Idaho, including offices, such that the exercise of personal jurisdiction will not offend the notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this judicial District.

## STATEMENT OF FACTS

12.     This case involves one of the few "taboo" types of legal challenges in our profession which usually results in a federal court expressing extreme hesitation whether it should intervene. This hesitation exists despite a federal court's "virtually unflagging" duty to adjudicate constitutional challenges brought against state bar committees. Federal courts across the Country hear challenges brought by claimants against some of the most elite and powerful forces on the planet, but there seems to be some magical fortification with a state's bar that always gives a federal judge subjective pause.

13.     In this case, however, Plaintiff pleads a claim such that this Court must adhere to its unflagging duty to hear this controversy. Plaintiff has spent the past three (3) years studying these types of claims exclusively, and this Verified Complaint is pled with precision bringing the claims within the narrow exceptions of *Younger* abstention.

14.     Plaintiff is a native to Delaware. He first moved to Idaho in 2016 to attend Concordia University School of Law on a full scholarship. After graduating from Concordia third (3rd) in his class—and setting the school record for the most CALI Awards ever earned by a full-time law student—he decided to travel back to Delaware and sit for the Delaware Bar Exam, which is the hardest bar exam in the United States. Plaintiff passed the Delaware Bar Exam on the first try in July of 2019 and he then decided to come back to Idaho to sit for the Idaho exam in July of 2020.

15.     Plaintiff was denied admission by ISB for his July 2020 bar application due to his mental and emotional health diagnoses ("first bar application"). The subject matter involving the first bar application—which is not relevant to this case—is delineated within the Companion case and is pled to demonstrate Plaintiff's standing in that case to challenge the facial validity of certain bar admissions rules maintained by the ISB in their future application.

### Plaintiff's Second Bar Application Was Filed And Irrefutable Notice of Plaintiff's Procedural Due Process Rights Was Personally Served Upon Defendants

16.     On April 11, 2022, Plaintiff filed his second bar application to sit for the July 26-27, 2022 bar examination ("Second Application"). Because Plaintiff filed the companion case which is currently pending before this Court—and because Plaintiff is well-are of the endless games state bars try to play to sabotage an applicant who brings redress against them—Plaintiff served upon the ISB a letter which placed the ISB on irrefutable notice of the constitutionally-mandated due process requirements which the ISB was required to adhere to in the process of the second bar application. *See* **Exhibit A**. (referenced herein as "the Notice"). Plaintiff served the ISB with the Notice within ten (10) minutes of filing the Second Application.

17.     Because Plaintiff has had to sit in the penalty box for close to three (3) grueling years, Plaintiff has utilized his time wisely. Plaintiff has spent the past three (3) years studying

every bar admissions case in the United States (300+) and has even obtained historical records of "good moral character" inquiries going back to the days of the Colonists, who are the source of the term "good moral character" as a prerequisite to the legal profession. Plaintiff has also read every federal case for claims brought against state bar committees for misconduct in the admissions/disciplinary process since 1973. One of the nastiest and most harmful things a state bar can (and frequently does) do, is impose needless delay against an applicant or attorney disciplinary who is suspended from the practice of law. Thus, Plaintiff wanted to nip that mess in the bud before it even came into existence.

18.     The Notice was carefully and artfully drafted and *ironically* included all the case law which is the basis for this very Complaint. *See* **Exhibit A** at pp. 11-12. Plaintiff wanted there to be no dispute that if the Defendants tried to impose needless delay to cause Plaintiff intentional and irreparable harm, that they would be acting in the utmost level of bad faith and in direct-knowing contravention of Plaintiff's procedural due process rights. Among other things, the Notice required the ISB to issue a decision on Plaintiff's Second Application within "*thirty (30) days from the date of my application submission . . . either approving or denying the application . . . thereby providing me enough time to conduct thorough discovery and to litigate a new show cause hearing and receive a decision before the July 2022 Bar Examination.*" *Id.* at p. 12.

19.     The Notice was served upon the ISB personally, and Defendant Pirtle personally confirmed receipt of the Notice and acknowledged his understanding of the Notice requirements. *See* **Exhibit B**.

20.     Although an initial decision was not issued within the thirty (30) day time limitation, Plaintiff did not automatically bring a *Gershenfeld*[1] challenge to this Court because on May 6, 2022, Defendants sent to Plaintiff an "Applicant Status Sheet" which showed that Plaintiff was registered to sit for the July, 2022 bar examination and that the ISB was actively processing the application in accordance with the Notice. Thus, Plaintiff did not feel as if he had reason to bring a *Gershenfeld* challenge before this Court in light of ISB's Applicant Status Sheet which negated any emergency circumstances.

### The Applicant Status Sheet Was An Intentional Ploy And Defendants Are Now Trying To Impose An Additional Six (6) Months of Needless Delay In Bad Faith To Await Judge Patricco's Decision In The Companion Case

21.     The Application Status Sheet was obviously a **ploy** to sabotage Plaintiff's ability to bring his *Gershenfeld* challenge before this Court on an emergency basis. Despite being placed on irrefutable notice, the ISB did not issue a timely decision on Plaintiff's Second Application. Instead, the ISB ***intentionally*** waited until June 17, 2022—after Plaintiff expended significant finances and was in the midst of bar prep—to serve upon Plaintiff a "Notice of Application Deferral" notifying Plaintiff that the ISB chose at its own spontaneous instance to defer Plaintiff's bar examination to the February, 2023 bar exam; keeping Plaintiff out of his livelihood for an additional six (6) months without cause. *See* **Exhibit C**.

22.     When confronted with Plaintiff's protests, Defendant Pirtle contended that the ISB desired to have Plaintiff come in for a "Rule 208 Examination" pursuant to I.B.C.R. Rule 208, and that Defendant Pirtle needed the additional time because "there are a substantial number

---

[1] The term "*Gershenfeld* Challenge" references the landmark case of *Gershenfeld v. Justices of Supreme Court*, 641 F. Supp. 1419, 1424 (E.D. Pa. 1986) (a state bar must hold a timely hearing and issue a prompt show cause hearing decision so as to avoid unnecessary delay of the ability to practice law and to avoid unnecessary injury resulting from the delay) which is the premise of the instant case.

of records that [Pirtle] need[s] to review to adequately prepare for the Rule 208 examination."
*See* **Exhibit D**.

23.     Defendant Pirtle's contentions are a bunch of malarkey. *First*, all Defendants,
including Pirtle, were placed on notice since April 11, 2022 that if they wanted to take any action
which could impose delay upon Plaintiff, that they were to do so within thirty (30) days of the
Second Application's submission so there would be enough time to render a decision before the
July, 2022 bar exam. They have thus had ample time to hold a meeting and issue a decision.
*Second*, there is no new information or happenings that was not already disclosed in the First
2020 Application, and the factual matter of each application is identical. *See* **Exhibit A** at pp. 11-
12. And, although Defendant Pirtle will try to cover up ISB's egregious conduct by claiming that
he is new to his position and was unfamiliar with Plaintiff's First Application, such defenses are
bogus because (1) Defendant Pirtle has had since April, 2022 to become familiar with Plaintiff's
application materials and (2) even if he for some reason did not have the time, the ISB could
have easily contracted former Bar Counsel Brad Andrews who was involved with Plaintiff's
First Application to represent ISB's interests, pursuant to ISB's publicly-issued decision to
contract Mr. Andrews for such specialized matters. *See* **Exhibit E**. There is no valid justification
for delaying Plaintiff from receiving a decision on his ability to practice his livelihood and
Defendants are doing for no other reason than malice and spite.

24.     Additionally, Defendants' contentions are further false because **Plaintiff
extended numerous offers to Defendants throughout May, 2022 to come in for a Rule 208
Examination** by Plaintiff's request. Plaintiff even offered to bring in his current employer,
whom the Defendants know personally and trust, and allow Defendants to ask any questions
their hearts so desired. The Defendants did not take Plaintiff up on his offer but instead waited

until the eleventh hour to provide Plaintiff a notice of deferral without explanation or lawful authority. **Exhibit C.**

25.     The _real reason_ Defendants have tried to inflict six (6) additional months of needless delay is due to the utmost level of bad faith and harassment. Defendants wish to "wait out" the decision of Judge Patricco in the Companion case because, should Judge Patricco determine that Defendants' admissions rules violate the Americans with Disabilities Act ("ADA")—the challenged Rules being Defendants' justification for denying Plaintiff's First Application—then Defendants will not be able to utilize the offending rules as justification of their discriminatory denial of Plaintiff's Second Application.

26.     It is Defendants' hope that Judge Patricco will rule that the challenged Rules do not violate the ADA, which will invigorate Defendants' discriminatory practices, so that Defendants will be able to use Plaintiff's mental health diagnoses as justification for a discriminatory second denial of his bar application.

### This Is Not Some Wild Conspiracy Theory, Defendants Are Imposing The Six (6) Months of Needless Delay In The Complete Absence of Lawful Authority

27.     Plaintiff promises this Court and swears to Jesus Christ of Nazareth that this is not just some wild conspiracy theory or mere satisfaction with decisions of a state agency. The Defendants are trying to impose six (6) months of needless delay in the complete absence of lawful authority. Just look at the Notice of Deferment provided to Plaintiff. **Exhibit C**. It cites to I.B.C.R. Rule 219 which pertains to deferments of a bar application. However, Rule 219 provides no precedent for the _ISB_ imposing six (6) months of needless delay upon their own spontaneous instance, rather, the Rule pertains to an _Applicant's_ right to defer his or her application under certain circumstances:

**Deferment**. An Applicant who is unable to take the bar examination after filing an Application may submit a written request for deferment to the next scheduled bar examination date, provided:

(1) The deferment request must be received by the Executive Director no later than the first day of the currently scheduled bar examination and be accompanied by a $100 filing fee;

(2) The Applicant must submit a supplemental application form before the late Application deadline under Rule 203 for the next scheduled bar examination. An Applicant whose supplemental application form is incomplete shall not take the next bar examination; and

(3) No deferment shall be granted if the Applicant has appeared for a character and fitness examination.

I.B.C.R. Rule 219.

28.     Defendants have been enabled to violate Plaintiff's rights due to the absence of a rule requiring a prompt show cause hearing followed by a prompt post-hearing decision, substituted instead by a rule which requires that a hearing be provided upon the *literal convenience* of Defendants. Idaho Bar Commission Rule 215(f)(1) is unconstitutional and facially invalid as it states that a show cause hearing "shall be scheduled at a time ***convenient*** to the Applicant **and the Board."** I.B.C.R. Rule 215(f)(1) (Emphasis added). Plaintiff definitely has standing to challenge this Rule since I.B.C.R. Rule 215(d) states the show cause hearing requirements pertain to "any order denying or ***modifying*** an Application." The Defendants' spontaneous decision to modify Plaintiff's bar application to the February application process is definitely a "modification" since Plaintiff is required to reapply all over again and incur additional expense.

## Plaintiff Has An Immediate Threat of Irreparable Harm Which Is Concrete And Particularized And That This Court Can Redress With A Favorable Decision

29.     In the absence of Court-ordered relief in this matter, Plaintiff will suffer immediate and irreparable harm which cannot be made whole with money damages. No legal

remedy would ever suffice to properly address state action that ultimately results in denying Plaintiff's rights guaranteed by the Due Process Clause of the United States Constitution and ultimately results in Plaintiff being kept out of his calling, needlessly, for an additional six (6) months without due process of law. The ability to practice law means more to Plaintiff than his home, however expensive that home may be, and the denial of such privilege requires the *most exacting demands* of due process of law.

30.     Plaintiff will also suffer immediate and irreparable harm in the absence of Court-ordered relief in the form of economic damages. Plaintiff has already been kept out of his calling for three (3) godforsaken years and the economic impact of such delay has cost Plaintiff hundreds of thousands of dollars in lost income. Another six (6) months of needless delay will only add to this ongoing injury.

31.     Additionally, in the absence of Court-ordered relief Plaintiff will have to reapply for the Idaho State Bar yet a third time and will have to pay another $800.00 to register, and Plaintiff will lose his approval of accommodations for the bar exam because of his disability. *See* **Exhibit C**. Plaintiff has expended thousands of dollars in expert evaluations to be given accommodations approval and he will have to re-do all of it if he is made to reapply for the third time. *Id*.

32.     Lastly, the absence of Court-ordered relief in this matter will cause devastating irreparable harm. Plaintiff was able to transfer his passing 2019 Multistate Bar Examination (MBE) score from Delaware to Idaho for the July 2022 bar exam, requiring only that Plaintiff sit for and pass a mini bar exam. Such score is only good for an approximate of three (3) years and will not be applicable for the February 2023 examination. Thus, Plaintiff will have to sit for the entire bar examination all over again instead of simply taking the partial exam that he is currently

approved for. Plaintiff will then be required to spend months without income preparing for the entire bar exam and will be made to spend thousands of dollars all over again to complete the Barbri Bar Review Course, which he has already done once.

33.    Court-ordered relief on an emergency basis is *absolutely crucial* in this case as Defendants will need to hold their requested "Rule 208 Examination" on an expedited basis with enough time for Defendants to issue a decision before the July 2022 bar examination.

## COUNT I- *GERSHENFELD* CHALLENGE: VIOLATION OF 42 U.S.C. §1983 VIOLATION OF PROCEDURAL DUE PROCESS (All Defendants)

34.    Plaintiff re-alleges and incorporates by reference all allegations and Paragraphs of this entire Complaint, above and below, as though fully set forth herein.

35.    Pursuant to 42 U.S.C. §1983, every person who under color of State law, custom, or usage, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

36.    This case involves Plaintiff's application to practice law; his profession. The United States Supreme Court has repeatedly held that states must adhere to the *most stringent* form of procedural due process when a state seeks to suspend, disbar, or deny a license to practice law. *SCHWARE v. Bd. OF BAR Exam'rs OF N.M.*, 77 S. Ct. 752, 753 (1957); *Willner v. Comm. on Character & Fitness*, 83 S. Ct. 1175, 1179-80 (1963); *Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 174 (1971); *Gershenfeld v. Justices of Supreme Court*, 641 F. Supp. 1419, 1424 (E.D. Pa. 1986).

37.    The most basic of these procedural due process requirements requires notice and an opportunity to be heard in a meaningful time and in a meaningful manner without

unreasonable delay. The Due Process Clause also requires that a decision to suspend, disbar, or deny a professional license be issued promptly and without undue delay.

38.     As a mere applicant to the bar, Plaintiff has a liberty interest requiring adherence to the most exacting demands of procedural due process. *SCHWARE,* 77 S. Ct. at 753; *Willner,* 83 S. Ct. at 1179-80; *Wadmond*, 401 U.S. at 174; *Dexter*, 116 Idaho at 793, 780 P.2d at 115.

39.     The Defendants are attempting to impose at least six (6) months of needless delay while Plaintiff is completely barred from practicing his calling. This action is without just cause and is undertaken in bad faith; Defendants' only reason for doing this is because they want to wait out Judge Patricco's decision in the Companion Case before they proceed with the Second Application. Defendants frivolously toy with Plaintiff's livelihood as if their right to do so is a vestigial survival of the prerogative of the crown, while each Defendant indulges in the luxuries of practicing his calling. Defendants are trying to destroy Plaintiff's life just to see if they can utilize facially-discriminatory rules against Plaintiff in his Second Application. The right to practice law "is **not a matter of grace and favor**." *SCHWARE,* 77 S. Ct. at 753; *Willner,* 83 S. Ct. at 1179-80.

40.     Defendants' actions are undertaken in the utmost level of bad faith and their proffered justifications for imposing needless delay are *knowingly false*. The Defendants knew of their obligations to Plaintiff under the Due Process Clause because they were personally served with the Notice and yet Defendants are intentionally trying to violate Plaintiff's constitutional rights. In addition to the Notice, Defendants were reminded—numerous times—that they were required to hold a special meeting if needed in order to comply with Constitutional mandates, such special meetings being available to Defendants under I.B.C.R. Rule 904(b).

41.     Any one of the Defendants would have a *conniption* if the ISB decided to suspend their law licenses for six (6) months without due process simply because ISB wanted "more time" to prepare a case against them, which is Defendants pro-offered justification in this case. Especially so, if ISB imposed such needless delay after having many months to prepare anything it needed so that it could provide the Defendant with a timely hearing.

42.     Plaintiff's interest in practicing law is the same as any one of the Defendants regardless of whether Plaintiff has a property interest in his law license, as the United States Supreme Court, as well as the Idaho Supreme Court, has repeatedly held that bar applicants have a significant liberty interest requiring the receipt of the most exacting demands of procedural due process. In fact, the U.S. Supreme Court draws no distinction between the due process rights afforded to either bar applicants or attorney disbarments. *SCHWARE,* 77 S. Ct. at 753; *Willner,* 83 S. Ct. at 1179-80; *Wadmond*, 401 U.S. at 174. And, Plaintiff's circumstances are akin to either disbarment or suspension because the result is the same; a man who has expended hundreds of thousands of dollars and over seven (7) years of schooling is being completely blocked from the ability to engage in his life's calling and the pursuit of happiness.

43.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable financial harm, emotional harm, public and private humiliation, damage to his career, and other cognizable injury. In addition to the economic damages, in the absence of Court-ordered relief Plaintiff will suffer irreparable harm that cannot be compensated with money as Plaintiff is being deprived of a right far greater; the right to practice his calling.

44.     This Court is limited in the relief it can grant against a state bar, and Plaintiff seeks limited relief which is complicit with this Court's lawful authority. As Plaintiff will delve into with the Memorandum in Support of a TRO and Preliminary Injunction, filed concurrently

with this Complaint, a federal court can never tell a state bar "you have to let this guy in" or "you do not have a valid reason for denying this guy." Regulating the bar is a function reserved exclusively for the states. However, there are two exceptions to this rule, and they are narrow exceptions. A federal court can involve itself when (1) a plaintiff challenges the constitutionality of bar admissions rules; and (2) a federal court can order that a state bar hold a timely due process hearing followed by a timely post-hearing decision. Other than that, federal courts have no authority to interfere. Plaintiff seeks only both types of relief.

WHEREFORE, Plaintiff requests that the Court issue a temporary restraining order, preliminary injunction, and permanent injunction against Defendants ordering (i) that the Defendants cease all needless delay and that Defendants hold their "Rule 208 Examination" within ten (10) days of this Court's Order; (ii) that Defendants issue a timely post-hearing decision on Plaintiff's ability to sit for the July, 2022 bar examination within five (5) days of the hearing; (iii) that Defendants refrain from any efforts to impose unconstitutional delay against any present or future bar application involving Plaintiff; and (iv) that this Court award Reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 as well as any other relief it deems appropriate.

## COUNT II- INJUNCTIVE AND DECLARATORY RELIEF UNDER U.S. Const. Amendment XIV--I.B.C.R. RULE 215(f)(1) IS UNCONSTITUTIONAL (All Defendants)

45.     Plaintiff re-alleges and incorporates by reference all allegations and Paragraphs of this entire Complaint, above and below, as though fully set forth herein.

46.     As a result of Defendants' acts, practices, customs, laws, and rules, Plaintiff has been deprived of his due-process rights under the Fourteenth Amendment of the United States Constitution and subject to 42 U.S.C. § 1983

47.     The Due Process Clauses and the Equal Protection Clause of the 14th Amendment guarantee the fairness of laws—substantive due process guarantees that laws will be reasonable and not arbitrary, and equal protection guarantees that similarly situated persons will be treated alike.

48.     Every bar applicant and attorney subject to action by Defendants is entitled to notice and an opportunity to be heard at a reasonable time and in a reasonable manner. The reasonable time requirement is compounded in cases in which a professional licensee is deprived of their ability to engage in their calling, requiring that a hearing be held on an expedited basis and without needless delay.

49.     In this case, Idaho Bar Commission Rule 215(f)(1) is unconstitutional because it **(literally)** makes the receipt of procedural due process contingent upon the *convenience* of the ISB. The Rule states that a show cause hearing "shall be scheduled at a time ***convenient*** to the Applicant **and the Board."** I.B.C.R. Rule 215(f)(1) (Emphasis added).

50.     This Rule encompasses the possibility that an applicant—like Plaintiff—may be set and ready to litigate his case for the right to engage in his or her calling but be needlessly delayed by what is *convenient* to the Board. In this case, the Board found it *convenient* to try and delay Plaintiff's due process hearing for over six (6) months for their own personal interests—to see what Judge Patricco will do in the companion case. This Rule thus has enabled a flagrant and unprecedented abuse of the legal process and is facially invalid. The right to due process should *never* be contingent upon the convenience of the government, especially where, such as in this case, the right involves the complete exclusion of a man from his profession.

> Neither statute specifies a time or even allows for any means of calculating the time within which the hearing must be held. . . Rule 208(f) specifies no time within which the Disciplinary Board must file its recommendation following the disposition hearing, nor, whenever it does, the time within which the Supreme

Court of Pennsylvania must enter its final order adjudicating the case. Plainly, Rule 208(f) is unconstitutional on its face.

*Gershenfeld v. Justices of Supreme Court*, 641 F. Supp. 1419, 1425 (E.D. Pa. 1986).

51.     The Rule also, by its very text, invites arbitrary and discriminatory enforcement as it subjects the receipt of due process upon the mere convenience of Defendants.

52.     Plaintiff has been adversely impacted by the Rule and will be injured by the Rule in the absence of Court-ordered relief in this matter. Such injury is irreparable and immediate and involves damages which include but also exceed economic damages.

WHEREFORE, Plaintiff requests that the Court (i) declare that I.B.C.R. Rule 215(f)(1) violates the Fourteenth Amendment of the United States Constitution; (ii) issue a temporary and permanent injunction preventing the Defendants from enforcing the Rule in a way which is unconstitutional by inflicting needless delay; (iii) award Plaintiff his attorneys' fees and costs for services provided in this action; and (iv) award Plaintiff any other relief that the Court determines is appropriate.

## <u>COUNT III- DECLARATORY AND INJUCTIVE RELIEF</u>

53.     Plaintiff re-alleges and incorporates by reference all allegations and Paragraphs of this entire Complaint, above and below, as though fully set forth herein.

54.     Plaintiff is in doubt as to his rights, privileges, and immunities with respect to the conduct at issue herein. Plaintiff requires a judgment declaring his rights, privileges, and immunities. There is a clear, present, actual, substantial, and bona-fide justiciable controversy between the parties.

55.     Plaintiff has no adequate remedy at law. No amount of money damages could adequately compensate the Plaintiff for the irreparable harm described herein. Plaintiff in this

case wishes to exercise rights that are guaranteed to him under the United States Constitution. No legal remedy would ever suffice to properly address state action that ultimately results in denying citizens' rights guaranteed by the Due Process and Equal Protection Clause, and the other constitutional provisions discussed herein.

56.     Plaintiff and the public-at-large will suffer irreparable injury if injunctive relief is not granted and Defendants are further permitted to enforce the customs, policies, practices, and impermissible laws and rules at issue herein. The loss of rights guaranteed by the Constitution is so serious that, as a matter of law, irreparable injury is presumed, and, in such an instance involving the loss of rights ensured by the Due Process and Equal Protection Clause, damages are both inadequate and unascertainable.

57.     The public interest would best be served by the granting of injunctive relief, and indeed, the public interest is disserved by permitting the enforcement of customs, policies, practices, laws, and rules that are designed to and do exhibit a callous indifference to Plaintiff's constitutional rights.

58.     All conditions precedent to the institution and maintenance of this cause of action has occurred or has been performed.

59.     The acts and practices of Defendants as set forth herein, were and are being performed under color of law and, therefore, constitute state action within the meaning of the Fourteenth Amendment to the Constitution of the United States.

WHEREFORE Plaintiff requests entry of a Temporary Restraining Order and Preliminary Injunction requiring the Defendants to cease their delaying and intentional sabotaging of Plaintiff's admissions process and to hold a timely hearing and issue a prompt show cause hearing decision on his admission to the Idaho Bar. Plaintiff requests entry of a

judgment declaring that I.B.C.R. Rule 215(f)(1) is unconstitutional and unenforceable, and that the Plaintiff is not required to comply with the terms of this Rule as he makes his second attempt to get into the Bar. Plaintiff requests entry of a preliminary and permanent injunctive relief necessary to implement the judgment, and an award of attorneys' fees, costs, and such other and further relief as the Court deems appropriate.

## **DEMAND FOR A BENCH TRIAL**

Plaintiff demands a bench trial to be presided over by an impartial arbiter of justice who is not affiliated with any of the Defendants on either a personal or professional basis. Plaintiff avers and respectfully suggests that the proper jurist for this case is the Magistrate Judge who is currently presiding over the Companion Case.

Respectfully Submitted,

[VERIFICATION ON NEXT PAGE]

DATE: June 19, 2022

_____/S/_____
Brooks M. Witzke
LAWMAN LLC
P.O. Box 85
Lava Hot Springs, Idaho 83246
302-604-4925
BrooksWitzke@Witzkelaw.com

*Plaintiff and Attorney for Plaintiff*

20

## VERIFICATION

Brooks M. Witzke, pursuant to 28 U.S.C. §1746, being first duly sworn, states that he has read the foregoing Complaint; that he is familiar with the contents thereof; and he declares under the penalty of perjury that the facts stated therein are true and correct to the best of his knowledge.

DATED: June 19, 2022

Brooks M. Witzke